IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHALI RENEE KIRKWOOD, *et al.*,       *
                                      *
    Plaintiffs,                   *
                                      *
vs.                                   *   CIVIL ACTION NO.23-00070-TFM-B
                                      *
NANCY BUCKNER, *et al.*,              *
                                      *
    Defendants.                   *

## REPORT AND RECOMMENDATION

This action is before the Court on Defendants Nancy Buckner, Remigia Coleman, Miya Bell, Charnise Brown, Alexandria Waffle, and Shelby Campbell's Motions to Dismiss Plaintiffs' First Amended Complaint. (Docs. 16, 40). The motions, which have been fully briefed, were referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends that Defendants' Motions to Dismiss (Docs. 16, 40) be **GRANTED in part and DENIED in part**.

### I. BACKGROUND

Plaintiffs Shali Renee Kirkwood ("Ms. Kirkwood"), Jack Paul Kirkwood ("Mr. Kirkwood"), and S.R.K., a minor child suing through her mother and next friend Ms. Kirkwood, initiated this action in the Circuit Court of Baldwin County, Alabama. (Doc. 2-1). Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441, 1443, and 1446. (Doc. 2). After their original complaint

was deemed an impermissible shotgun pleading(Doc. 10), Plaintiffs filed their amended complaint on May 31, 2023 (Doc. 14).

The operative amended complaint names the following Defendants: Nancy Buckner ("Buckner"), Commissioner of the State Department of Human Resources ("Alabama DHR"); Remigia Coleman ("Coleman"), Director of the Baldwin County Department of Human Resources ("Baldwin County DHR"); supervisor Miya Bell ("Bell"); caseworker Charnise Brown ("Brown"); caseworker Alexandria Waffle ("Waffle"); caseworker Shelby Campbell ("Campbell"); and former caseworker Tina Green ("Green").

The Kirkwoods allege that in September of 2022, Defendant Brown contacted them about temporarily fostering sixteen-year-old N.L.D., who was in the custody of the Baldwin County DHR. (Doc. 14 at 2). Mr. and Ms. Kirkwood agreed and accepted N.L.D. into their home two days later. (Id.). Shortly thereafter, Mr. and Ms. Kirkwood advised Baldwin County DHR, through Defendants Campbell, Brown, and Bell, that they were willing to foster N.L.D. indefinitely. (Id.). At some point during N.L.D.'s foster placement with the Kirkwoods, they grew concerned with N.L.D.'s behavior and expressed their concerns to Defendants Bell and Waffle. (Id.). Specifically, they advised that N.L.D. "was caught watching pornographic videos and stealing from [their] home." (Id.).

On November 16, 2022, when Ms. Kirkwood was home with S.R.K., N.L.D., and her three other minor children, she noticed S.R.K.'s door was closed and locked. (Id.). Ms. Kirkwood opened the door and observed both N.L.D. and S.R.K. on the bed, naked, and "N.L.D. with an erect penis ... digitally touching and/or digitally penetrating S.R.K.'s vagina." (Id.). Ms. Kirkwood immediately notified authorities. (Id.).

The Kirkwoods allege, upon information and belief, that Defendants Coleman, Green, Bell, Brown, Waffle, and Campbell all had actual and constructive knowledge of N.L.D.'s history of committing sexual assault on minor children. (Id.). They further allege that they were not informed of N.L.D.'s history of sexual assault on minor children until after he "abused, molested, and/or raped" S.R.K. (Id. at 3). According to the Kirkwoods, Defendant Bell informed them of N.L.D.'s history of committing sexual assault on minor children and that she was aware of it. (Id.).

The Kirkwoods assert seven causes of action against Defendants based on the above factual allegations, including one federal claim and six state law claims: (1) failure to protect from harm pursuant to 42 U.S.C. § 1983; (2) negligence and/or wantonness; (3) negligence per se; (4) tort of outrage; (5) fraudulent suppression of material fact; (6) fraudulent misrepresentation / deceit / deceit with intent to induce injury or risk; and (7) civil conspiracy. (See Doc. 14).

Presently pending before the Court are near identical motions to dismiss filed by Defendants Buckner, Coleman, Bell, Brown, and Waffle (Doc. 16), and Defendant Campbell (Doc. 40)[1]. The Kirkwoods filed responses in opposition (Docs. 24, 47) and Defendants filed reply briefs (Docs. 34, 37). The near identical motions are now fully briefed and ripe for resolution. For purposes of clarity, the Court will treat the near identical motions as a consolidated motion in the discussion that follows.

## II. **STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss a complaint when the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). While a complaint does not require "detailed factual allegations," it "requires more than labels and

---

[1] Defendant Tina Greene filed an answer. (Doc. 44)

4

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). What's more, "[f]actual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (per curiam) (citation and internal quotation marks omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court "must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Almanza v. United Airlines, Inc., 851 F.3d 1060, 1066 (11th Cir. 2017). Additionally, notwithstanding the alleged facts, Rule 12(b)(6) "[d]ismissal is . . .permitted 'when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.'" Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1308 (11th Cir. 2006) (per curiam) (citation omitted). And, the Court need not accept as true "conclusory allegations, unwarranted deductions of factors or legal conclusions masquerading as facts." Oxford Asset Mgmt., Ltd. V. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002); Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) ("Legal conclusions without adequate factual support are entitled to no assumption of truth.").

**III. <u>DISCUSSION</u>**

**A. Failure to Protect from Harm pursuant to 42 U.S.C. § 1983**

Defendants contend the Kirkwoods' claims should be dismissed because Defendants are entitled to qualified immunity and state-agent immunity. (Docs. 16, 40). They also allege that the Kirkwoods' claims are subject to dismissal because they fail to state a claim upon which relief can be granted. (<u>Id.</u>).

The Kirkwoods, on the other hand, argue that their amended complaint satisfies the pleading requirements of Rules 8(a)(2) and 10(b) of the Federal Rules of Civil Procedure. (<u>See</u> Docs. 24, 47). According to the Kirkwoods, Defendants violated their Fourteenth Amendment right to substantive due process as enforced through 42 U.S.C. § 1983. (Docs. 24, 47 at 8-10). Relying on the "special danger" theory, the Kirkwoods allege that Defendants violated their substantive due process rights by knowingly creating a dangerous opportunity for the harm to occur which would not have "otherwise existed absent the government official's conduct." (Doc. 14 at 7). Specifically, the Kirkwoods allege Defendants violated their clearly established constitutional right to be free from government caused harm because Defendants had direct access to N.L.D.'s records and history of inappropriate sexually deviant propensities, yet they failed or refused to warn the Kirkwoods of this information before placing N.L.D. in their

home.  (Id.). The Kirkwoods further allege that in failing to provide them with this information, Defendants acted willfully, fraudulently, with bad faith, beyond their authority and/or under a mistaken interpretation of the law, and that Defendants' conduct suffices to establish deliberate indifference to the risk that N.L.D. would reoffend in their home. (Id.)

As to the "special danger" theory, it was formerly recognized in the Eleventh Circuit "where the state, through its affirmative acts, put the victim in 'special danger' of harm." White v. Lemacks, 183 F.3d 1253, 1255 (11th Cir. 1999).  The Eleventh Circuit has now made clear that the theory is "no longer good law"; it is "dead and buried." Id. at 1259.  The theory has, instead, been supplanted by the "shocks the conscience" standard. Id. at 1258.

Absent a custodial relationship, a person who is harmed by the acts of a local government employee may establish a violation of his or her right to substantive due process if the act "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998); see White, 183 F.3d at 1257 ("[T]he only relationships that automatically give rise to a governmental duty to protect individuals from harm by third parties under the substantive due process clause are custodial relationships, such as those which arise from the incarceration of prisoners or other

forms of involuntary confinement through which the government deprives individuals of their liberty and thus of their ability to take care of themselves.").

Given that the instant action does not arise in the custodial setting, there is no governmental duty to protect individuals, such as the Kirkwoods, from harm by third parties under the substantive due process clause. Accordingly, this Court must determine whether the Kirkwoods have asserted a claim that satisfies the "shocks-the-conscience test." Lewis, 523 U.S. at 834.

> The Supreme Court has acknowledged that "the measure of what is conscience-shocking is no calibrated yard stick." Lewis, 118 S.Ct. at 1717. We know for certain, however, that a showing of negligence is insufficient to make out a constitutional due process claim. Lewis, 523, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043 (1998). And even intentional wrongs seldom violate the Due Process Clause. Acts "intended to injure in some way unjustifiable by any government interest" are "most likely to rise to the conscience-shocking level." Id. But, even conduct by a government actor that would amount to an intentional tort under state law will rise to the level of a substantive due process violation only if it also "shocks the conscience." Dacosta v. Nwachukwa, 304 F.3d 1045, 1048 (11th Cir. 2002).

> "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." Lewis, 118 S.Ct. at 1716 (1998) (quotation and citation omitted). Determinations of what is egregious conduct must not be made in the glow of hindsight; decisions made by a government actor <u>must be egregious-that is, shock the conscience-at the time the government actor made the decision.</u> See e.g. DeShaney, 109 S.Ct. at 1006 (noting that, because State had no constitutional duty to protect child against his father's violence, its failure to do so-though calamitous in hindsight-did not

8

constitute a violation of the Due Process Clause); see also Rodriguez v. Farrell, 280 F.3d 1341, 1352-53 (11th Cir. 2002) (concluding that hindsight could not be used to judge police officer's act of handcuffing suspect, but rather it was necessary to consider what the police officer knew or reasonably should have known at the time of the act).

In some cases, a state official's deliberate indifference will establish a substantive due process violation. But, "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another, and [the] concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." Lewis, 118 S.Ct. at 1718-19. In this noncustodial setting, a substantive due process violation would, at the very least, require a showing of deliberate indifference to an extremely great risk of serious injury to someone in the Plaintiff's position. See McClendon v. City of Columbia, 305 F.3d 314, 326 (5th Cir. 2002) (stating that Plaintiff was required to demonstrate that "the defendant state official at a minimum acted with deliberate indifference toward the plaintiff"); see also Nix v. Franklin County School Dist., 311 F.3d 1373, 1376 (concluding that deliberate indifference was insufficient to constitute a due-process violation in a non-custodial school setting).

Waddell v. Hendry Cnty. Sheriff's Office, 329 F.3d 1300, 1305-06 (11th Cir. 2003) (emphasis in original).

Turning to the case at hand, the Kirkwoods assert that Defendants knew N.L.D. exuded sexually deviant propensities for engaging in inappropriate sexual misconduct and that he engaged in such misconduct previously; yet, Defendants failed to place the Kirkwoods on notice of such when they were asked to accept N.L.D. as a foster child in their home. (See Doc. 14 at 7-9).

9

In Doe v. Braddy, the Eleventh Circuit addressed whether state social workers were entitled to qualified immunity in a case involving substantially similar facts. 673 F.3d 1313 (11th Cir. 2012) (per curiam). The state social workers placed a teenaged minor in an adoptive home with knowledge that there had been prior allegations and instances of the teenager's misconduct, and that a psychologist's report recommended that the teenager be placed in a group house or residential treatment facility, as opposed to a family foster home where other children might be vulnerable to his sexual acts. Id. at 1316. The psychologist also recommended that the teenager receive treatment that would give "attention to matters of sexuality," and noted that until appropriate placement and treatment could be arranged, the teenager required close supervision, he should never be left alone with other children, and he should not share a bedroom with other children. Id. A few months later, the teenaged minor was eventually placed in an adoptive home and, while there, he sexually abused the five-year-old grandson of the adoptive parents. Id. at 1317. The adoptive parents were never showed a copy of the psychologist's report.

Acting through his mother, the five-year-old victim sued the state workers under 42 U.S.C. § 1983, claiming a violation of his federal substantive due process rights. The state social workers moved for summary judgment on qualified immunity grounds, but the District Court denied the motion. See Doe v. Braddy, 2010 U.S.

10

Dist. LEXIS 158112 (N.D. Ga. Nov. 29, 2010). On appeal, the Eleventh Circuit observed that "if the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burden of litigation." Braddy, 673 F.3d at 1317. The Court also observed that "[q]ualified immunity to a great extent protects government officials performing discretionary functions; it should protect all officials except 'the plainly incompetent or those who knowingly violate the law.'" Id. (citations omitted). The Court determined that in placing the teenaged minor with an adoptive family, the defendants were "unquestionably state officials acting within the scope of their discretionary authority. So, [the plaintiffs borne] the burden of showing that qualified immunity [did] not apply." Id. at 1318.

The Court also noted that the question of harm caused to a person situated such as the five-year-old minor victim-who was not in a custodial relationship with the state-yet who sustained injuries from another child in an adoptive setting was not a question previously addressed by the Court. Id. The Court confirmed that "if the plaintiff alleging the rights violation is in no custodial relationship with the state, then state officials can violate the plaintiff's substantive due process rights only when the officials cause harm by engaging in conduct that is "'arbitrary, or conscious shocking, in a constitutional sense.'"

11

Id. at 1319 (quoting Collins v. City of Harker Heights, 503 U.S. 115, 112 S.Ct. 1061, 1070, 117 L. Ed. 2d 261 (1992)). This standard "'is to be narrowly interpreted and applied,' White, 183 F.3d at 1259, such that 'even intentional wrongs seldom violate the Due process Clause.'" Braddy, 673 F.3d at 1318 (footnote omitted) (citing Waddell, 329 F.3d at 1305).

The Court concluded that for qualified immunity purposes, "the federal law applicable to the specific circumstances of th[e] case was not close to established clearly at the pertinent time." Id. The Court noted that to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . .the unlawfulness must be apparent." Id. at 1319 (quoting Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987)). "Furthermore, if case law is necessary to show unlawfulness, that decisional law must apply with 'obvious clarity' to the officials' own conduct--what they are doing--to give 'fair warning' to the officials that their specific conduct violates federal law." Id. (citing Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2516, 153 L. Ed. 2d 666 (2002).

The Court held that the developed federal law at the time stopped well short of clearly establishing the unlawfulness of the social workers' conduct; thus, the individual defendants were entitled to qualified immunity. Id. at 1320. The Court further

12

noted that the plaintiffs cited no binding authority that required for "substantive due process purposes," that all psychological information about a potential adoptive child be provided to and called to the attention of the potential adoptive parents, and that the psychologist's recommendations were given with the caveat that the professionals working with the teenaged minor should have a say in any placement decision. Id. at 1319-20. The Court held, based upon all information available at the time, that the officials' "decision--even if incorrect and ultimately harmful, in fact, to [the five-year-old victim]--to place the [teenaged minor] in th[e] adoptive home just was not obviously arbitrary or conscious shocking in a constitutional sense." Id. at 1319-20.

Taking into account the Eleventh Circuit's Doe v. Braddy decision, and the other extant case law discussed above, the undersigned finds that while the allegations in in the Kirkwoods' amended complaint are alarming, they do not rise to the "arbitrary, conscious shocking" level required to state a substantive due process violation. Nor have the Kirkwoods identified any controlling cases from which this Court could conclude that at the time of the alleged misconduct, the law was clearly established that the failure to provide information about propensity for sexual assaults to prospective foster parents rises to the level of a substantive due process violation. Accordingly, the undersigned

13

recommends that the Kirkwoods' substantive due process claim against Defendants be dismissed with prejudice.

**B. Remaining State Claims**

Considering the factors of judicial economy, convenience, and fairness to the litigants, the undersigned recommends that the Court decline to exercise supplemental jurisdiction over the remaining state law claims as no scheduling order has yet been entered and discovery has not yet commenced. See Williamson v. Ala. Dep't of Mental Health, 2023 U.S. App. LEXIS 21562, at *36, 2023 WL 5287873, at *12 (11th Cir. Aug. 17, 2023) ("We [ha]ve long 'encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.'"); Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) (encouraging district courts to dismiss remaining state claims when federal claims have been dismissed before trial). Thus, the Kirkwoods' state law claims should be dismissed without prejudice. Daniel v. Hancock Cnty. Sch. Dist., 626 F. App'x 825, 836 (11th Cir. 2015) (per curiam) (the district court properly dismissed the plaintiff's federal claims; thus, the district court did not abuse its discretion by declining to exercise supplemental jurisdiction.)

**C. Defendant Tina Green**

The Kirkwoods have asserted an identical substantive due process claim and state law claims against Defendant Tina Green,

who did not join in the motions to dismiss filed by the other Defendants. (See Doc. 44). The Kirkwoods are placed on notice by the filing of this Report and Recommendation of the undersigned's intention to *sua sponte* recommend the dismissal of their claims against Defendant Tina Green for the reasons set forth in the instant Report and Recommendation. The Kirkwoods are afforded the opportunity to include within any objections they have to this Report and Recommendation any reasons that should preclude dismissal on behalf of Defendant Tina Green. McNiece v. Town of Yankeetown, 817 F. App'x. 842, 846 (11th Cir. 2020) ("[A] district court may *sua sponte* dismiss a complaint for failure to state a claim so long as it provides notice of its intent to dismiss and an opportunity to respond.") (citing Surtain v. Hamlin Terrance Foundation, 789 F.3d 1239, 1248-49 (11th Cir. 2015) and Jefferson Fourteenth Assocs. v. Wometco de P.R., Inc., 695 F.2d 524, 527 (11th Cir. 1983)).

## IV. CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** that Defendants' Motions to Dismiss Plaintiffs' claims be **GRANTED in part**, and **DENIED in part**; that Plaintiffs' federal substantive due process claims against all Defendants, including Defendant Green, be dismissed with prejudice; that the Court decline to exercise supplemental jurisdiction over Plaintiffs' remaining

15

state law claims against all Defendants, including Defendant Green, and that those claims be **DISMISSED WITHOUT PREJUDCE.**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

16

**DONE** this **23rd** of **February, 2024.**

                                                                          **/s/ SONJA F. BIVINS**
                                                           **UNITED STATES MAGISTRATE JUDGE**